O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN RUBTSOV, ANA TZUBERY, and V.R., a minor, by and through her Guardian Ad Litem, Nick Rubtsov,<br><br>         Plaintiff,<br><br>     v.<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, MICHAEL WATROBSKI,<br><br>         Defendants. | Case No. CV 14-01839 DDP (JCx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT IN PART**<br><br>[DKT. NO. 55] |

Presently before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint ("SAC").  Having considered the submissions of the parties, the court grants the motion in part and adopts the following Order.

**I. Background**

As described in this court's earlier Orders, Plaintiffs Ivan Rubtsov ("Rubtsov"), Ana Tzubery ("Tzubery"), and Rubtsov's daughter, minor V.R. ("V.R.") (collectively, "Plaintiffs") bring this action against the Los Angeles County Department of Children and Family Services (the "County"), DCFS grievance review officer

Michael Watrobski ("Watrobski"), Doe defendants, and newly-named Defendants Ian Rosen and Xavier Rosales, both DCFS employees. Plaintiffs allege violations of law resulting from the inclusion of Plaintiffs' personal information in statewide databases for child abuse allegations.

The factual allegations of the Fourth Amended Complaint (FAC) remain, in large part, unchanged. Rubtsov and his wife, Tzubery, reside with Rubtsov's fourteen year-old daughter, V.R. Rubtsov's ex-wife, Ulyana Rubtsova ("Ulyana"), has custody of Rubtsov's other two children. Plaintiffs allege that in 2008, Rubtsov made allegations to the County against Ulyana of physical abuse and neglect of their three children. Ulyana made similar allegations against Rubtsov. Ultimately, eleven resulting referrals with respect to Rubtsov were closed as unfounded or inconclusive. Nevertheless, Plaintiffs allege that after the last of the eleven referrals were closed, Defendants Watrobski, Rosen, and Rosales, changed certain of the dispositions to "conclusive or founded" against Rubtsov.

In 2012, Rubtsov and Tzubery applied to Penny Lane Foster Family Agency (the "Agency") "to be foster parents, possibly adopt, and/or obtain guardianship of children," and were approved. In May 2013, an infant child was placed in Plaintiffs' home by the Agency. Three days later, however, the Agency removed the infant from Plaintiffs' home without prior notice and informed Plaintiffs that their names were listed in the Child Abuse Central Index ("CACI") database of potential child abusers because of a substantiated 2009 allegation of child abuse. The Agency told Plaintiffs that,

because of their inclusion in the databases, Plaintiffs could not be foster parents, adopt children, or work with children.

Plaintiffs allege, upon information and belief, that Rosales, Rosen, and Watrobski created the 2009 referral to help Rubtsov's ex-wife, Ulyana, obtain custody of the couple's children, and that Rosen admitted to doing the investigation at Ulyana's request. Plaintiffs later confirmed that they were included in the CACI database, the Child Welfare System/Case Management System ("CWS/CMS") database, and other databases. The FAC further alleges that Rosales, Rosen, and Watrobski told Plaintiffs that the trio intentionally placed the "false altered information" in CACI, CWS/CMS, and 500 other databases. (FAC ¶ 24.) Rosen also allegedly told his manager, Rosales, that he had initiated a complaint with Rubtsov's employer, the IRS, alleging that Rubtsov stole money and credit cards from Rosen. (FAC ¶ 50.)

Following the removal of the infant from Plaintiffs' home, Rubtsov requested information and a hearing regarding Plaintiffs' inclusion in the databases. The hearing request was initially denied. Plaintiffs allege that Rubtsov was told he was not in the CACI database, and therefore was not entitled to a hearing. Later, Defendant Watrobski, who is alleged to be the Chief Grievance Review Officer responsible for all CACI appeals, allegedly told Rubtsov that Rubtsov could have a CACI hearing, but only if Rubtsov waived certain rights, and that the other Plaintiffs would remain in the databases regardless of the outcome of Rubtsov's hearing. Rosales also allegedly told Plaintiffs "to be really careful about what you demand," and "you know your children might be in danger of removal at any time by us." (FAC ¶ 51.) Plaintiffs also allege

3

that Rosales, a DCFS manager, said, "Watrobski, Rosales, and Does 2 through 5, could order Plaintiffs' children taken at any time they wanted, and there was nothing Plaintiffs could do about it." (FAC ¶ 74.) Plaintiffs allege that they were never allowed to offer live testimony or call witnesses, or examine witnesses who statements led to Plaintiffs' inclusion in the databases.

Plaintiffs originally asserted causes of action for (1) "42 U.S.C. § 1983 constitutional violations for unlawful policies, customs, and habits;" (2) civil conspiracy; and (3) intentional infliction of emotional distress ("IIED") against both the County and Watrobski. The court dismissed all causes of action against Watrobski, with leave to amend, but allowed the first cause of action to proceed against the County. Plaintiffs then filed a First Amended Complaint. On Defendants' motion, the court again dismissed all claims against Watrobski, and dismissed all but the first cause of action as to the County. The court again granted Plaintiffs leave to amend.

Plaintiffs' SAC, unlike previous iterations of their complaint, alleged six causes of action for: (1) 42 U.S.C. § 1983 violations, "Unlawful Policies, Customs and Habits against Defendant County . . .;" (2) 42 U.S.C. § 1983 violations, "Unlawful Policies, Customs and Habits . . . As Against All Individual Defendants;" (3) Civil Conspiracy against all individual defendants;(4) IIED; (5) California Civil Code § 43 violations; and (6) California Civil Code § 52.1 violations. The court again dismissed all claims, save the First Cause of Action against the County, and granted Plaintiffs leave to amend one final time with respect to Watrobski and certain, but not all, other claims.

4

Plaintiffs subsequently filed a Third Amended Complaint, then the operative FAC to correct a typographical error. Defendants again move to dismiss.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for

5

relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.   Section 1983 Claim Against Individual Defendants

Plaintiffs alleges claims against Rosales, Rosen, and Watrobski ("the Individual Defendants") in both their official and individual capacities. As explained in this court's earlier Orders, a claim for unconstitutional custom or policy is a municipal liability claim, which may be asserted against the County only. The court therefore dismissed Plaintiffs' § 1983 claims against Watrobski in his official capacity as redundant of Plaintiffs' claims against the County. See Kentucky v. Graham, 473 U.S. 159, 165 (1985); Hartmann v. California Dep't of Corrs. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013).

In granting Plaintiffs leave to amend, the court has noted numerous times that Plaintiffs cannot assert claims against Watrobski in an individual capacity solely by reference to customs, policies, and acts relevant to Plaintiffs' municipal liability claim, but rather must identify which of Watrobski's acts form the basis for a claim against him in an individual capacity. Having now alleged individual capacity claims against three individuals, Plaintiffs must identify which of each of the Individual Defendants' acts give rise to an individual § 1983 claim. See, e.g. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[T]here must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983.").

Problematically, and consistent with previous iterations of the FAC, Plaintiffs continue to allege claims against the Individual Defendants in both their individual and official capacities, without distinguishing which of the Individual Defendants' acts were undertaken in their official capacities (which would be redundant of Plaintiffs' Monell claim) and which acts form the basis for individual liability. Indeed, other than the addition of the new Defendants and the incorporation by reference of the prior portions of the FAC, Plaintiffs' Second Cause of Action hardly differs from the prior versions, which this court dismissed.[1] Instead of attempting to identify which actions underpin their individual liability claims and which constitute official policies, customs, or acts, Plaintiffs assert that they need make so such distinction. (Opp. at 7 ("Plaintiff is not required at the pleading stage to make a final determination as to which acts by each defendant are for individual liability or official liability.").) The authority Plaintiffs cite for that argument, Kentucky v. Graham, 473 U.S. 159 (1985) stands for no such principle. Plaintiffs persist in conflating municipal liability claims with individual liability claims.

Nevertheless, in light of the court's general preference for resolution on the merits, the court declines to dismiss the individual section 1983 claims against the Individual Defendants at this juncture. Although Plaintiffs have failed to identify which of the alleged acts might support a finding of individual

---

[1] The court further notes that other paragraphs now constituting the Second Cause of Action appear to be drawn from other causes of action previously dismissed by this court.

liability, many of the acts alleged appear inherently individual. It is unlikely, for example, that the Individual Defendants falsely and admittedly entered false information into the CACI and other databases, conspired with Ulyana to help her obtain custody of all of her children, and explicitly threatened Plaintiffs as a matter of official policy or custom.

Accordingly, Defendants' Motion to Dismiss the section 1983 claim against the Individual Defendants in their individual capacities is denied.

### B. Civil Conspiracy

Plaintiffs also bring the Third Cause of Action for Civil Conspiracy against all of the Individual Defendants. The failure to distinguish individual from official acts, explained above, remains problematic. See Walck v. Dunkerson, No. CV 04-55-H-DWM, 2006 WL 2498554 at *3 (D. Mont. Dec. 4, 2006) ("Where all defendants act under color of state law, a conspiracy theory serves no purpose. Under § 1983, a plaintiff cannot state a claim against an individual defendant unless the plaintiff sets forth facts demonstrating how _each_ defendant _caused_ or _personally participated in causing_ a deprivation of plaintiff's protected rights.") In any event, a plaintiff bringing a conspiracy claim under section 1983 "must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotations and citations omitted).

The Third Cause of Action alleges that the Individual Defendants "conspired, combined, and agreed to falsely substantiate allegations of Plaintiffs' abuse against children." (FAC ¶ 107.)

8

The SAC further alleges that all three Individual Defendants "falsely identified Plaintiffs as child abusers [and] failed to disclose known exculpatory evidence . . . ." (FAC ¶ 109.) These allegations, however, and those incorporated by reference, are too conclusory or implausible to sustain a conspiracy claim. In most instances, Plaintiffs have simply amended their allegations to allege that all three Individual Defendants did everything together. The FAC repeatedly alleges that all three Individual Defendants put false information into the CACI and CWS/CMS databases, and frequently attributes specific statements to all three Defendants. (See, e.g. FAC ¶¶ 56, 58, 59, etc.) Among these allegations are implausible allegations that all three Individual Defendants told Plaintiffs "that the false altered information contained in [the] databases about [Plaintiffs] was intentionally placed in those statewide databases" by all the Individual Defendants, and that Rosales specifically stated, "Watrobski, Rosen, Rosales, and Does 2 through 5, could order Plaintiffs' children taken at any time they wanted, and there was nothing Plaintiffs could do about it."[2] (FAC ¶¶ 24, 74.) Absent something more than allegations that, essentially, all three Individual Defendants collectively did every wrongful act alleged in the FAC, the Third Cause of Action for Civil Conspiracy is DISMISSED, with prejudice.

//

---

[2] Although the court might, under some circumstances, assume this allegation to be the result of a drafting error, Plaintiffs' opposition makes no such contention. Further, the court notes that this is the Fourth Amended Complaint, the filing of which was necessitated by a typographical error in the Third Amended Complaint.

9

**IV. Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.  Plaintiffs' Third Cause of Action is DISMISSED, with prejudice.[3]

IT IS SO ORDERED.

Dated: January 29, 2016

DEAN D. PREGERSON
United States District Judge

---

[3] Although Defendants appear to seek the dismissal of the FAC in its entirety, they present no argument regarding why the First Cause of Action against the County, which this court has thus far allowed to proceed, should be dismissed.