JS-6                                                O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN RUBTSOV, ANA TZUBERY, and V.R., a minor, by and through her Guardian Ad Litem, Nick Rubtsov,<br><br>            Plaintiff,<br><br>    v.<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, MICHAEL WATROBSKI,<br><br>            Defendants. | Case No. CV 14-01839 DDP (JCx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**DKT. NO. [107]** |

Presently before the Court is Defendants' Motion for Summary Judgment. Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. Background**

Beginning in 2008, during Plaintiff Ivan Rubtsov ("Mr. Rubtsov")'s divorce from Ulyana Rubtsova ("Mrs. Rubtsova"), child abuse claims were lodged against Mrs. Rubtsova regarding the

couple's three children. (Declaration of Dianne B. Weissburg, Ex. 23 at 11 ¶¶ 40-41; Ex. 24 at 5-6 ¶ 23.) In 2009, Los Angeles County Department of Children and Family Services ("DCFS") social worker Defendant Ian Rosen ("Rosen") investigated two of the four referrals against Mrs. Rubtsova. (Declaration of Jennifer Gysler, Ex. D; Weissburg Decl., Ex. 6 at 5.) During his investigation, Rosen determined that Mr. Rubtsov had actively engaged in "parental alienation." Rosen's determination was informed by his participation as a witness in a custody dispute between Mr. Rubtsov and Mrs. Rubtsova in Los Angeles County Superior Court. During those proceedings, the family court judge found that Mr. Rubtsov had "engaged in a pattern of deplorable behavior which has had an enormously detrimental impact on his children . . .[;]" and ordered that Mrs. Rubstova gain primary custody of the couple's youngest two children, with Mr. Rubstov retaining custody of Plaintiff V.R. (Defendants' Request for Judicial Notice, Ex. C at 75-76.)

Rosen subsequently recommended that Defendant DCFS open a separate inquiry into Mr. Rubtsov for what Rosen believed was ongoing emotional abuse of the children. (Weissburg Decl., Ex. 6 at 5.) This investigation ultimately resulted in Plaintiffs' inclusion in certain child abuse databases, including the Child Abuse Central Index ("CACI") and the Child Welfare Service/Case Management System ("CWS/CMS"). (Gysler Decl., Ex. D at 4; Weissburg Decl., Ex. 23 at 2-3 ¶ 9.) The timing of those inclusions, however, is unclear from the record. Although the evidence cited by Defendants is somewhat ambiguous, it appears that, due to some oversight, Mr. Rubtsov was not actually referred for investigation or placed into the CACI database until 2013. (Gysler Decl., Ex. I

2

at 40-41.) It appears, however, that he was included in CWS/CMS in 2009. (Gysler Decl., Ex. I at 24.)

During his separation from Mrs. Rubtsova, Mr. Rubtsov rekindled his romance with his ex-wife, Plaintiff Ana Tzubery ("Tzubery"). Plaintiffs allege that Rosen came to their house in 2009 to solicit a bribe to ensure preferential treatment, but was rebuffed by Mr. Rubtsov and Tzubery. (Weissburg Decl., Ex. 23 at 4 ¶ 12, Ex. 24 at 3 ¶ 9.) After this, Rosen and Defendants Michael Watrobski ("Watrobski") and Xavier Rosales ("Rosales," collectively with Watrobski and Rosen, the "Individual Defendants") allegedly threatened to "destroy" Mr. Rubstov and Tzubery and to interfere with Mr. Rubtsov's family and employment. (Weissburg Decl., Ex. 23 at 5 ¶¶ 18-20.)

In 2011, Rubtsov and Tzubery applied to family foster agency Penny Lane to be foster parents. Penny Lane certified their home for placement in April 2013. (Weissburg Decl., Ex. 24 at 5 ¶ 20; Gysler Decl., Ex. K at 89.). In May 2013, Penny Lane placed an infant with Mr. Rubtsov and Tzubery, but removed the child three days later when Penny Lane discovered that Mr. Rubtsov and Tzubery were on "Do Not Use" lists. (Weissburg Decl. Ex. 23 at 9 ¶ 35, Ex. 24 at 5 ¶ 21.) According to Mr. Rubtsov, Plaintiffs were assigned "Do Not Use" status in relation to potentially adopting or fostering children as a result of Plaintiffs' inclusion in child abuse databases. (Weissburg Decl., Exh. 23 at 7 ¶27, 10 ¶¶ 36-37.)

To shield Tzubery and Mr. Rubstov's eldest daughter, Plaintiff V.R., from DCFS scrutiny, Mr. Rubtsov and Tzubery separated in September 2013. (Weissburg Decl. Exh. 23 at 8 ¶7.) In March 2014,

3

a foster child was placed in Tzubery's home. (Weissburg Decl. Ex. 24 at 8 ¶ 37.) Tzubery continued to face foster placement difficulties related to her linkage with Mr. Rubtsov in "Do not Place" databases. (Weissburg Decl., Ex. 24 at 41-46.)

Following the Penny Lane incident in 2013, Mr. Rubtsov approached DCFS to clear his name from the CACI database. (Weissburg Decl., Ex 23 at 11 ¶ 43.) Only then did it become apparent that Mr. Rubtsov had never actually been placed in the CACI database and, therefore, could not administratively challenge his inclusion or request a grievance hearing. Rubtsov then requested that he be formally reported and entered in CACI so that he could officially challenge his inclusion.[1] (Gysler Decl., Ex. I at 40, 44.) A CACI hearing was scheduled, but Mr. Rubtsov then had a "concern" about the hearing, which, at Mr. Rubtsov's request, did not take place.[2] (Gysler Decl., Ex. L at 151-152; Weissburg Decl., Ex. 11.)

Rather than proceed with a grievance hearing, Mr. Rubtsov, along with Plaintiff Tzubery and Plaintiff V.R., filed the instant civil rights action, alleging due process violations against

---

[1] Mr. Rubtsov testified that, while he did not want to be in CACI, he did want to be cleared, and requested that he be removed from "the system." (Weissburg Decl., Ex. 3 at 141.)

[2] According to Plaintiffs, Tzubery and V.R. are in the databases only by association with Mr. Rubtsov, and not because either were charged with abuse. (Weissburg Decl. Ex. 23 at 12 ¶ 50-51, Ex. 24 at 7 ¶ 30.) Tzubery and V.R. claim that they have been afforded no opportunity to clear their names, and that their names will remain in the databases in perpetuity. (Weissburg Decl. Ex. 23 at 11 ¶43, 13 ¶ 52, Ex. 24 at 6 ¶ 26, 7 ¶ 31.) Defendants contend that V.R., who was listed in the CACI database as a minor, will automatically be removed from the system after ten years, barring any further listings. (Gysler Decl. Ex. J at 111.)

4

Defendants. Defendants now move for summary judgment on all remaining claims in Plaintiffs' Fourth Amended Complaint.[3]

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex,

---

[3] This court previously dismissed Plaintiffs' claim for civil conspiracy. See Dkt. 63.

5

477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

Plaintiffs' Fourth Amended Complaint alleges causes of action against DCFS and the Individual Defendants under 42 U.S.C. § 1983 for constitutional violations in the form of deprivation of due process. To succeed, Plaintiffs must show that defendants 1) acted under color of law and 2) deprived Plaintiffs of a constitutional right. McDade v. West, 223 F.3d 1135, 1139 (9th Cir. 2000). Here, there is no dispute that Defendants acted under color of law. The question, therefore, is whether there remains a triable issue of fact regarding whether Plaintiffs were deprived of their constitutional right to procedural due process.

Courts engage in a two-step analysis of due process claims. United States v. Juvenile Male, 670 F.3d 999, 1013 (9th Cir. 2012). The first step looks to whether the government has interfered with an existing liberty or property interest. Id. If so, the analysis proceeds to examine "whether the procedures attendant upon that deprivation were constitutionally sufficient." Id. In other words, the deprivation of even a constitutionally protected interest is not unconstitutional unless the deprivation occurs without due process of law. Humphries v. County of Los Angeles, 554 F.3d 1170, 1184 (9th Cir. 2009) (reversed on other grounds).

### A. Protected Interest

The analytical framework applicable here is set forth in Humphries. 554 F.3d 1170 at 1185-86. There, plaintiff parents remained listed in the CACI database even after being found factually innocent of the charges leading to their initial placement in the database. Humphries, 554 F.3d at 1181-82. At the time, however, no formal process existed for challenging inclusion in the CACI system. Id. at 1182. Potential employers, educational institutions, and other organizations who ran the plaintiffs' information through CACI, in some cases as required by law, continued to identify the plaintiffs as "substantiated" child abusers. Id. Having exhausted all avenues for excision from CACI, the plaintiffs filed a Section 1983 claim alleging a due process violation.

In evaluating the plaintiffs' claims, the Ninth Circuit applied a "stigma-plus" test to determine, under the first step of the due process analysis, whether the plaintiffs had been deprived of a constitutionally protected right or interest. Id. at 1185.

Under the "stigma-plus" test, reputational harm rises to the level of a liberty interest only where a person suffers some stigma from governmental action <u>and</u> "a right or status previously recognized by state law" is altered or extinguished. <u>Id</u>. (citing <u>Paul v. Davis</u>, 424 U.S. 693, 711 (1976). The <u>Humphries</u> court found it obvious that being labeled as a child abuser in the CACI database was stigmatizing. <u>Id.</u> at 1186. Whether that stigma altered an existing right, however, presented a closer question.

In addressing that more difficult issue, the court emphasized that under state law, several licensing regimes required CACI background checks as a prerequisite for, among other things, employment in child care, certain volunteer opportunities, and child custody placements. <u>Id.</u> at 1187-1188. Furthermore, the court determined, several other agencies and non-governmental institutions, including several types of employers and foster agencies, accessed CACI as a matter of common practice, even though not legally mandated to do so. Given the likelihood that the plaintiffs' CACI results would at least complicate their efforts to obtain employment or other benefits, the <u>Humphries</u> court concluded that the "plus" element of the stigma-plus test was satisfied, and that the plaintiffs' inclusion in the CACI database did implicate a constitutionally protected interest. <u>Id.</u> at 1191-92.

Plaintiffs' main contention here is that this case, which centers on CWS/CMS listings, is indistinguishable from <u>Humphries</u>, which focused on CACI. (Opposition at 10-20.) One district court has, in large part, agreed with this argument. In <u>Castillo v. County of Los Angeles</u>, 959 F.Supp.2d 1255 (C.D. Cal. 2013), the court denied the defendant's motion for summary judgment,

concluding that even though external access to inflammatory CWS/CMS information is "highly restricted," numerous statutory exceptions to the confidentiality of CWS/CMS information rendered the listings sufficiently accessible to be analogous in effect to the CACI information discussed in Humphries, and to implicate a liberty interest. Castillo, 959 F.Supp.2d at 1262.

As an initial matter, the record here is not sufficiently developed to allow this court to reach the same conclusion as that reached by the Castillo court.[4] Defendants represent that, unlike CACI, CWS/CMS is a "closed" system. (Motion at 24.) Indeed, pursuant to California Welfare & Institutions Code Section 827, juvenile case files are confidential.[5] Although, as the Castillo court pointed out, there are exceptions to that confidentiality, such exceptions apply to entities such as court personnel, the child and his or her parents, school officials, and government and child welfare agencies. Cal. Welf. & Inst. Code § 827. Although it is certainly possible that some exceptions, such as that for "[m]embers of children's multidisciplinary teams" might expand CWS/CMS accessibility somewhat, there is no evidence in the record before this Court of widespread availability of CWS/CMS information or frequency of access comparable to the CACI information at issue in Humphries, let alone evidence of significant impacts resulting from such widespread access. Cal. Welf. & Inst. Code § 827(a)(1)(K). Indeed, Plaintiffs support their assertions that

---

[4] Notably, as discussed below, the plaintiff in Castillo, unlike Mr. Rubtsov here, was listed only in CWS/CMS and not CACI, and therefore had no administrative remedy available to him.

[5] CACI information sharing is governed by a different statute, California Penal Code § 11170.

9

"information contained in the current CWS/CMS databases is accessible to many persons, more so than in the CACI index," and is available "to numerous in-state and out-of-state governmental entities and agencies" with but one citation to the record: a document indicating that entities such as the Los Angeles County Sheriff's Department, DCFS itself, the Probation Department, and other county agencies have access to CWS/CMS information.[6] (Opp. at 12:11-12; 13:1-2; Weissburg Decl.,. Ex. 21 at 6-7.) In Humphries, in contrast, the court recognized that California explicitly required some agencies to search CACI and, importantly, the plaintiffs introduced evidence that other entities with CACI access "reflexively" checked the database. Humphries, 554 F.3d at 1191. Here, aside from Plaintiffs' single experience with Penny Lane, there is no similar evidence in the record of widespread access to or regular reliance upon CWS/CMS information. Plaintiffs have therefore failed to establish that their inclusion in CWS/CMS satisfies the "plus" prong of the liberty interest test.[7]

B. Due Process

Even assuming, for the sake of argument, that the record does support a finding that a liberty interest is implicated here,

---

[6] The court also observes that portions of Plaintiffs' argument in this regard appear to be verbatim, unattributed recitations of passages from Castillo.

[7] Although this court bases its conclusion on the current record, and takes no position as to whether a due process claim based upon CWS/CMS could possibly succeed, the court notes that the Ninth Circuit recently concluded, in a post-Castillo unpublished disposition, that CWS/CMS-based allegations did "not come close to the level of access we found to satisfy the 'plus' in Humphries." Khai v. Cty. of Los Angeles, 730 F. App'x 408, 412 (9th Cir. 2018). The Khai court further observed that Los Angeles County "vigorously disputed" that "numerous entities . . . have access to and use the information in CWS/CMS." Id.

10

Defendants are still entitled to summary judgment.  It is undisputed that Mr. Rubtsov could have challenged his placement in the CACI database in a grievance hearing.  Indeed, Mr. Rubstov requested such a hearing before later deciding not to go through with the administrative challenge.  Nor does there appears to be any dispute that CACI hearing procedures satisfy due process requirements with respect to CACI listings.  Plaintiffs contend, however, that because there is no way to separately challenge a CWS/CMS listing, and because they would remain in CWS/CMS "forever," regardless of the outcome of a CACI hearing, CACI procedures have no bearing on Plaintiffs' CWS/CMS-based due process claims.  (Opp. at 9.)

Although Defendants concede that there is no separate CWS/CMS challenge mechanism, there appears to be some dispute regarding the effect of a CACI hearing determination upon CWS/CMS results. Plaintiffs contend that the Individual Defendants stated that removal from CACI would not result in removal from CWS/CMS.  (Opp. at 9 (citing Plaintiffs' declarations).)  Regardless whether Defendants actually made that representation, it appears to be technically true.  As Grievance Manager Francesca LeRue testified, names cannot be completely removed from CWS/CMS.  (Reply Gysler Decl., Ex GG at 30.)  LeRue explained, however, that if "through the [CACI] grievance review hearing process the recommendation is that it's being removed to, say, unfounded, that change is made in CWS/CMS. . . .  We change the allegation disposition in CWS/CMS, and that's all we do with regard to CWS/CMS."  (Id.)  LeRue further explained that a successful CACI appeal would result in a CWS/CMS being "changed" or "correct[ed]."  (Gysler Declaration, Ex. G at

111.) Thus, although a successful CACI appeal would not result in a name being completely purged from CWS/CMS, it would result in a particular CWS/CMS allegation being changed to "unfounded."[8] Uncontroverted evidence establishes, therefore, that a successful CACI appeal would have had some positive effect on CWS/CMS results.

Plaintiffs do not cite, nor has this court discovered, any authority that has sustained a CWS/CMS-based due process claim while CACI grievance procedures are still available.[9] In Prasad v. Santa Clara Dep't of Soc. Servs., 685 F. App'x 538, 540 (9th Cir. 2017), for example, the Ninth Circuit affirmed the dismissal of a CWS/CMS due process challenge because the plaintiff had the ability to challenge the facts underlying the CWS/CMS listing in a CACI hearing, and indeed was pursuing that avenue of relief. Prasad, 685 F. App'x at 540. The court explained that the plaintiff would only have a plausible CWS/CMS due process claim if and once he obtained a reversal of the adverse determination and was removed from CACI. Id. The Ninth Circuit recently came to a similar conclusion in Endy v. Cty. of Los Angeles, 716 F. App'x 700, 701 (9th Cir. 2018). There, the Ninth Circuit similarly explained that until the plaintiff availed himself of CACI grievance procedures, "it will not be clear whether the information included in CWS/CMS

---

[8] Plaintiffs' Supplemental Exhibits, largely in the form of policy guidelines, reinforce that CACI grievance procedures are designed to address only CACI-related issues. (Plaintiffs' Supplemental Exhibits 8, 9, 13, 14A, 14C.) Defendants have not suggested otherwise. The Supplemental Exhibits, however, do not contradict LeRue's testimony that successful CACI appeals result in corresponding corrections of CWS/CMS entries.

[9] In Castillo, the plaintiff was initially denied a CACI hearing and later removed from CACI without a hearing. Thus, the Castillo plaintiff was unable to challenge his CWS/CMS listing through CACI proceedings.

12

is in violation of his due process rights. Thus, Endy's due process claim . . . regarding CWS/CMS was properly dismissed as premature." Endy, 716 F. App'x at 702.

Here, as in Prasad and Endy, Plaintiff cannot possibly succeed on a CWS/CMS-based due process claim while CACI grievance procedures, which, if successful, would result in a change of CWS/CMS entries to "unfounded," are still available to him. Even if the record were sufficient to establish that a CWS/CMS listing alone is sufficient "stigma-plus" to qualify as a protected liberty interest, Mr. Rubtsov cannot at present demonstrate that the procedures available to him are constitutionally deficient because he has not availed himself of those procedures.[10]

---

[10] The bulk of the parties' argument centers on Mr. Rubtsov's claims rather than those of Tzubery and V.R. Their claims, like Mr. Rubstov's, necessarily fail for lack of evidence that CWS/CMS listings alone qualify as "stigma plus." Furthermore, there is scant, if any, admissible evidence that either Tzubery or V.R. are listed as perpetrators in CWS/CMS. Although various exhibits refer to Tzubery's home, there is no dispute that Mr. Rubtsov resided there for some time, and one specific reference to a CWS finding for "Ms. T" herself, as opposed to the home that she shared with Mr. Rubtsov, explicitly states that allegations her were unfounded. (Plaintiff's Supplemental Exhibit 3 at 26.) The only admissible document that refers to V.R., a purported "DCFS printout," identifies V.R. only as a "Person[] Involved," before then listing Mr. Rubtsov's name under the heading "Emotional Abuse." (Id. at Ex. 14B.)

13

**IV. Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED. Plaintiffs' remaining claims are dismissed, without prejudice to their refiling upon the conclusion of CACI-related proceedings.

IT IS SO ORDERED.

Dated: 12-4-18

DEAN D. PREGERSON
United States District Judge